# In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-3662

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MARK A. REED,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CR 562—**Rebecca R. Pallmeyer**, *Judge.*

———————

ARGUED SEPTEMBER 26, 2005—DECIDED APRIL 7, 2006

———————

Before EASTERBROOK, RIPPLE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Mark Reed entered a conditional guilty plea to conspiracy to distribute in excess of 50 kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1). In that plea, Reed reserved the right to appeal the district court's denial of his motion to suppress which had sought to exclude incriminating statements he made to law enforcement authorities. This is his second appeal to this court on that issue. The first resulted in a remand to the district court for it to determine when he was arrested, whether the officers possessed probable cause at the time of that arrest and, if not, whether the confession was suffi-

ciently attenuated from that illegal arrest, applying the proper factors. *See United States v. Reed*, 349 F.3d 457 (7th Cir. 2003) (*Reed I*).

The facts underlying the criminal case are set forth in *Reed I*, and will be repeated only as is necessary to understand the legal issues before us in this case and to incorporate the findings by the district court on remand. Reed was one of three persons in a pickup truck that was towing a horse trailer on Interstate 57 when Illinois State Trooper C.G. Fifeld stopped the truck for speeding. The horse trailer contained two horses and was heavily padlocked. Fifeld determined that the driver of the truck, Alfonso Garnica, was driving with a suspended license. Garnica was arrested, but allowed to immediately post a $100 cash bond and was released at the scene. In the meantime, Fifeld ran background checks on Reed and the other passenger (and truck owner) Thomas Martin, to determine if either of them was permitted to drive the truck. In the course of that check, Fifeld learned that both men possessed valid driver's licenses but also had prior arrests for drug activity. Although Reed disputes that Fifeld actually knew of the drug arrests, the transcript supports the district court's determination that he learned of those arrests at the time of the background checks.

Fifeld talked with Martin, Garnica and Reed during the course of the stop. The district court apparently credited Officer Fifeld's testimony as to the statements made by the three men during that time. Because the men produced driver's licenses from Wisconsin, Texas and Indiana, Fifeld asked them what they were doing in Illinois. Martin stated that he was in Illinois to buy horses, but neither Martin nor Garnica could tell him where they had acquired the horses or who had provided them. Reed, on the other hand, responded that Martin had traveled to Illinois to finalize a divorce, and that he accompanied Martin because Martin had suffered health problems recently. After Martin moved

into the driver's seat to depart, Fifeld asked him whether there were any guns, drugs or money in the truck, which Martin denied. Martin then consented to a search of the vehicle. At approximately 4:00 p.m., the officers searching the vehicle found two bundles of cash wrapped in pink cellophane, totaling $93,981. The bundles were located in the gooseneck of the horse trailer, under the hay for the horses and beneath plywood boards. When confronted with the discovery, Martin stated that the cash represented the proceeds of an inheritance. The men were then transported to the police station.

In light of the substantial evidence indicating that Reed would not have felt free to refuse to accompany the officers to police headquarters and end the interrogation, the district court assumed that Reed was under arrest as of that point in time. The sole question, then, is whether the district court properly held that the officers had probable cause at that time to effectuate an arrest.

Probable cause exists if an officer reasonably believes, in light of the facts known to her at the time, that a suspect had committed or was committing an offense. *United States v. Carrillo*, 269 F.3d 761, 766 (7th Cir. 2001). It is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances. *United States v. Breit*, 429 F.3d 725, 728 (7th Cir. 2005). In determining whether suspicious circumstances rise to the level of probable cause, officers are entitled to draw reasonable inferences based on their training and experience. *Id.*; *Carrillo*, 269 F.3d at 766.

It matters not that the officers were apparently correct, by Reed's own admission, in their belief that Reed was not an innocent bystander. There are undoubtedly situations in which the passenger is not so involved. But this is not a post hoc determination. Subsequent evidence of guilt cannot validate the probable cause determination, nor can evidence

of innocence invalidate it. Prescience is not required of the officers. Instead, courts must focus on the real world situation as known to the officer at that time. The question is whether they had a reasonable belief at the time.

Reed argues that the existence of a large sum of money, and the manner of its concealment, cannot alone support a finding of probable cause. That is the holding in a number of cases and is not called into question here. *See e.g.*, *United States v. $506,231 In U.S. Currency*, 125 F.3d 442, 452 (7th Cir, 1997) and cases cited therein. Reed's conclusion that the money is therefore irrelevant to the probable cause determination, however, is untenable. In *Maryland v. Pringle*, 540 U.S. 366 (2003), the Supreme Court addressed a similar argument. In *Pringle*, drugs were found in the backseat of a car, and $768 in currency was discovered in the glove compartment. The appellate court had dismissed the $768 as a factor in the probable cause determination under the view that " '[m]oney, without more, is innocuous.'" *Id.* at 372 n.2, *citing Maryland v. Pringle*, 370 Md. 525, 546, 805 A.2d 1016, 1028 (2002). The Supreme Court, however, held that the court erred in considering the money in isolation rather than as a factor in the totality of the circumstances. *Id.* Accordingly, although the existence of the large amount of cash and its concealment in the floorboards of the trailer does not alone establish probable cause, it is a relevant circumstance that must be considered along with all aspects of the situation confronting the officers.

Taken as a whole, the circumstances were sufficient to support a reasonable belief that Reed was involved in criminal activity. At the time of the arrest, the officers knew that the three men had traveled from outside the state, but were evasive and contradictory as to the nature of their trip. Reed indicated that the purpose of the trip was so that Martin could finalize a divorce, but Martin indicated it was to purchase horses. Despite the presence of the horses in

the trailer, indicating that the purchase had been completed, they were unable to tell the officers where the horses were acquired or from whom they were purchased. The inconsistencies and vagueness of the stories would cause a reasonable person to believe that they were intentionally being evasive and deceptive about the nature of the trip. Equally significant, there was no reason to believe that the deception was limited to one person.

When asked whether there were guns, drugs, or large sums of money in the vehicle, Martin denied it. If the currency later discovered was truly the proceeds of inheritance, there was no reason for him to lie in response to that question. And the explanation was rendered more incredible because no one had indicated that the purpose of the trip was to collect an inheritance. Therefore, Martin's explanation required the officers to believe that he had previously collected on an inheritance, and that he chose to store those proceeds under plywood in a horse trailer and leave it there even as he embarked on an out-of-state trip.

Moreover, the currency was concealed in a manner that is typical for currency related to illegal drug transactions. It is common for such currency to be wrapped in cellophane so as to minimize the ability for a drug-sniffing dog to detect the drug residue often found on such currency, and to secrete it in a hidden area of a vehicle to escape detection. This does not mean that there cannot be an innocent reason to conceal currency, such as to thwart would-be thieves, but it is a relevant consideration in the totality of the circumstances. *United States v. Funches*, 327 F.3d 582, 587 (7th Cir. 2003) (noting that the mere existence of innocent explanations does not necessarily negate probable cause, and finding that probable cause existed where many circumstances of the situation made innocent explanations unlikely and even implausible). In addition, the officers knew that two of the travelers in the vehicle had prior drug

arrests, which further supports the reasonableness of the belief that the currency was the proceeds of illegal activity.

Reed asserts that the facts establish probable cause only as to Martin, the owner of the vehicle, and not to him as a passenger. For that argument, he relies on the Supreme Court's decision in *Ybarra v. Illinois*, 444 U.S. 85 (1979), in which the Court held that officers executing a warrant on a tavern lacked probable cause to search all patrons of that tavern at the time. The Court rejected the notion that a person's "mere propinquity" to others independently suspected of criminal activity would support probable cause as to that person as well. *Id.* at 91. The Supreme Court's decision in *Pringle*, however, is more closely on point. In *Pringle*, the Court considered whether police officers had probable cause to arrest the front-seat passenger of a car in which the officers found $768 in rolled-up cash in the glove compartment and five glassine baggies of cocaine behind the back-seat armrest. 504 U.S. at 368. The Court recognized that the presence of a passenger in a vehicle is different than that of a patron in a bar. " '[A] car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits of the evidence of their wrongdoing.' " *Id.* at 373, *quoting Wyoming v. Houghton*, 526 U.S. 295, 304-05 (1999). In *Pringle*, the Court held that it was reasonable for the officer to infer a common enterprise among the three occupants of the car. The Court held that "[t]he quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." 540 U.S. at 373.

Although we lack the presence of drugs in the vehicle as was the case in *Pringle*, the totality of the circumstances in this case similarly leads to an inference of a common enterprise to which an innocent person would not likely be

admitted. This was not a quick trip to a grocery store in which Reed was an unwitting passenger. This was a trip out-of-state. It is less likely that an innocent person would be allowed to accompany persons for such a trip. Moreover, Reed's own conduct furthered that inference of a common enterprise, in that his response to the purpose of the trip was also contradictory. His explanation that the purpose of the trip was so that Martin could finalize his divorce was inconsistent with Martin's explanation, and he too provided no explanation as to the origin of the horses. His prior drug arrests did nothing to dispel the suspicion that he was involved in a common enterprise to conceal the proceeds of illegal activity. The evidence was sufficient to support a finding of probable cause in this case, and therefore the district court did not err in granting the motion to suppress. The decision of the district court is AFFIRMED.

A true Copy:

      Teste:

 

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*