NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with

FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2010
Decided July 12, 2010

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-3856

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 08-40089-001 |
| CHRISTOPHER A. NELSON, *Defendant-Appellant.* | Michael M. Mihm, *Judge.* |

**O R D E R**

Christopher Nelson appeals the district court's denial of his motion to suppress evidence found in his hotel room and surrendered from inside his pants after he was arrested for possessing drug paraphernalia. Because we conclude that the police had probable cause to arrest Nelson and the evidence obtained following his arrest was not tainted, we uphold the district court's ruling and affirm Nelson's conviction.

After Cory Tompkins's neighbors complained to the Kewanee, Illinois, Police Department that his home was receiving a lot of suspicious traffic, the police began monitoring Tompkins's residence. In July 2008 the police used a confidential source to conduct two controlled purchases of crack cocaine from the home. According to the source, during the first buy he went into the house, gave Tompkins $20, saw Tompkins confer with a large, unidentified black male, then Tompkins gave the source a small amount of crack packaged in a tied-off corner of a plastic baggie. During the second controlled buy, after the source purchased crack packaged in the same manner as the first transaction, Tompkins offered to let the source smoke the crack in his home.

The police obtained a warrant to search Tompkins's house and seize any drugs, drug paraphernalia, money, or documents identifying the home's residents. When the police executed the warrant, they entered the house and saw a white male later identified as Tompkins attempting to run upstairs. Two other people, a large black male later identified as Nelson and a white female later identified as Buffy Burcham, remained in the living room. All three were detained and handcuffed while the police searched the house. In plain sight the officers found incriminating materials: a spoon with suspected cocaine residue, a small trash can containing about 70 plastic baggies with corners cut off, a plate with suspected cocaine residue, a soda can poked with holes and covered with burn marks, a digital scale, and a pipe with suspected marijuana residue. The police also noticed that the home had no running water, no furniture upstairs, and sparse furnishings downstairs, suggesting to them that the home was used for selling or consuming drugs.

During the search Burcham told one of the officers that "If it's not on him [indicating Nelson], it's going to be in the kitchen." The police arrested Tompkins, Nelson, and Burcham for possession of drug paraphernalia. Before heading to the police station two officers performed an "informal strip search" of Nelson and discovered only currency in the amount of $292.

At the station Nelson signed a form waiving his *Miranda* rights and discussed consenting to a search of the motel room where he was staying. Nelson initially refused to consent to a search, but after he overheard that a search warrant was being prepared for the room, he asked an officer if he would benefit from cooperating with the police. The officer told him that the prosecutor's office would be informed about any cooperation but the police could not promise leniency. Nelson then signed a form consenting to the search of the room.

The police took Nelson to the motel for the search. When they arrived, they realized that the consent form listed the wrong room number, so they destroyed the first form and had Nelson sign a second. Once inside the room, Nelson told the police that drugs and

cash were inside a black gym bag.  Officers searched the bag and found 14 individually wrapped bags of crack cocaine with a combined weight of just over 45 grams and $800 in cash.  As they were leaving, Nelson pulled a clear plastic bag containing approximately 20 grams of crack out of the front of his pants.  He told the surprised officers he'd "had it down there" the entire time.

Nelson was charged with conspiracy to distribute crack, 21 U.S.C. §§ 841(b)(1)(A), 846, and unlawful possession with intent to distribute crack, *id*. § 841(a)(1), (b)(1)(A).  He filed a motion to suppress, arguing that the police lacked probable cause to arrest him at Tompkins's home and that his subsequent consent to search his motel room and surrender of the drugs in his pants were the unlawful fruits of the illegal arrest.  The district court held a hearing at which Officer Nicholas Welgat, the "main officer" on the case who was involved in the searches of both Tompkins's home and Nelson's motel room and Nelson's arrest and strip search, and Officer Troy Ainley, who participated in the search of Tompkins's home and Nelson's interview, testified to the above facts.  On cross-examination Welgat admitted that he had not personally heard Burcham say that Nelson might have drugs on him; he learned of Burcham's statement from another, non-testifying officer who took part in the search of Tompkins's residence.  At the hearing, however, Nelson did not object to Welgat's account on hearsay grounds.  Welgat also conceded that Burcham's statement was not contained in any of the police reports about the search.  Finally, when Ainsley was cross-examined, he acknowledged that he had thrown away the first consent to search form signed by Nelson and that his report did not mention that Nelson had initially refused to consent to the search of his motel room.

The district judge expressed dismay about the officers' failure to document in their reports many of the facts to which they testified, but he nonetheless found the officers credible.  In denying Nelson's motion to suppress, the court concluded that Nelson's arrest for possessing drug paraphernalia was "not a perfect situation" and the police would not have been able to prove him guilty beyond a reasonable doubt at that time, but "that's not the test" and under the totality of the circumstances there was probable cause to arrest.  The court also determined that Nelson had knowingly and voluntarily waived his *Miranda* rights and freely consented to the search of his motel room.

Nelson pled guilty to unlawful possession with intent to distribute but reserved the right to appeal the denial of his motion to suppress; the government dismissed the conspiracy charge.  The district court sentenced Nelson to 120 months' imprisonment, the statutory minimum term.  *See* 21 U.S.C. § 841(b)(1)(A).

On appeal Nelson renews his argument that the police did not have probable cause to arrest him for possession of drug paraphernalia and that, consequently, the evidence

obtained from the consensual search of his hotel room and relinquished from his pants following his arrest was inadmissible. We review a district court's legal conclusions on a motion to suppress—including a determination of probable cause—de novo, and factual findings for clear error, giving special deference to a district court's credibility findings. *United States v. Thompson*, 496 F.3d 807, 809 (7th Cir. 2007). Probable cause exists "if an officer reasonably believes, in light of the facts known to her at the time, that a suspect had committed or was committing an offense." *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). It "relies on the common-sense judgment" of officers based on the totality of the circumstances and allows officers to draw reasonable inferences from their training and experience. *Id.* Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Levy*, 990 F.2d 971, 973 (7th Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983)).

Nelson attempts to analogize his situation to *Ybarra v. Illinois*, 444 U.S. 85 (1979), where the Supreme Court reversed a conviction for drug possession after determining that the police lacked probable cause to search the defendant. In *Ybarra* the police received a tip that a bartender was dealing heroin out of a public tavern, so they obtained a warrant to search the bartender and the tavern. *Id.* at 87-88. While executing the warrant the police conducted patdown searches of every customer at the tavern and found heroin on Ybarra, one of the tavern's patrons. *Id.* at 88-89. The Supreme Court noted that when the police entered the tavern, they did not recognize Ybarra or have any reason to believe that he had committed a crime and he did nothing to arouse their suspicions. *Id.* at 90-91. The Court held that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person" and explained that the requirement of particularized probable cause cannot be avoided by pointing out that there is probable cause to search the premises where person is found. *Id.* at 91.

Similar to the defendant in *Ybarra*, Nelson asserts, the police had no probable cause to suspect that he was involved in criminal activity when they entered Tompkins's home; they arrested him, he argues, based on nothing more than his presence in the house while it was being searched. He points out that, unlike Tompkins, he did not run from the police and contends that although he was found in the living room where police discovered drug paraphernalia, none of the items was in his "immediate physical control." He attempts to minimize the significance of the inculpatory comment attributed to Burcham —"If it's not on him, it's going to be in the kitchen"—because it is not in any of the official police reports and the officer who allegedly heard the remark did not testify at the suppression hearing.

The police had probable cause to arrest Nelson at Tompkins's home because, unlike *Ybarra*, the arrest here is based on more than his "mere presence" near criminal activity in a public place of lawful business. Nelson was present in a private dwelling that, with its drug paraphernalia, drug transactions, lack of furnishings and no running water, appeared to have no lawful purpose. In *United States v. Pace*, 898 F.2d 1218, 1240 (7th Cir. 1990), we rejected the defendants' argument that the police lacked probable cause to arrest them where officers executing a search warrant for a home suspected to be a site for drug-dealing observed the defendants exiting rooms in which the police found large quantities of either drugs or money out in the open. We reasoned that these observations, combined with the fact that the homeowner trusted the defendants enough to have them in his home while the money and cocaine were out in the open, could lead a reasonable person to conclude that the defendants were involved in a cocaine deal with the owner. *Id.* Here, similarly, Tompkins appeared to trust Nelson enough not to hide his drug dealing and paraphernalia, giving Nelson ready access to that paraphernalia at a private site that appeared to be a place specifically for drug dealing. These facts supported an inference that Nelson himself might be a drug customer or dealer.

Burcham's suggestion to the officers that Nelson had drugs on him further enhanced the inference of probable cause. Nelson criticizes the district court for crediting Burcham's arguably hearsay statement, but the court did not clearly err in doing so. First, the district judge heard testimony about the statement from Officer Welgat without any hearsay objection. Second, Officer Welgat credibly explained that he learned of the statement from a fellow officer who heard it directly from Burcham at the scene. For the district court to have erred, we would need to have the "definite and firm conviction" that Burcham did not make the incriminating statement. *See Easley v. Cromartie*, 532 U.S. 234, 242 (2001); *United States v. Burnside*, 588 F.3d 511, 517 (7th Cir. 2009). But Nelson offers no legitimate reason for that conclusion, so the court's finding of probable cause is secure.

Nelson also argues that it would be anomalous to uphold the denial of his suppression motion when, he says, reversal would be warranted under *United States v. Johnson*, 170 F.3d 708 (7th Cir. 1999), if only he had been leaving Tompkins's home when the police entered. Nelson's reliance on *Johnson* is misplaced. In *Johnson* we concluded that the police lacked reasonable suspicion to stop the defendant when he emerged from an apartment officers were hoping to investigate after receiving reports that it might be a spot for drug activity. *Id.* at 711, 720. We explicitly limited the scope of our decision, explaining that "we hold only that before a police officer targets a particular house and decides to seize literally anyone who might emerge from that house, he or she must either have a warrant or fall within one of the warrant exceptions that the Supreme Court has recognized." *Id.* at 710. The officers who arrested Nelson entered Tompkins's home

pursuant to a search warrant and, as explained above, based their arrest on both Nelson's position near drug paraphernalia in a house that seemed to have no legal purpose and Burcham's statement intimating that Nelson possessed drugs.

The totality of the circumstances reasonably suggested that Nelson was engaged in illegal activity, so the police had the right to arrest him. Nelson's only challenge to the consensual search of his motel room and his surrender of the drugs in his pants is that they were the product of the arrest. But because Nelson's arrest was legal, there is no problem with the subsequent search and surrender.

AFFIRMED.