In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3912

KENNY A. JONES, Sr.,

*Plaintiff-Appellant,*

*v.*

CITY OF ELKHART, INDIANA, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:10-cv-00402 — **Theresa L. Springmann**, *Judge.*

ARGUED SEPTEMBER 17, 2013 — DECIDED DECEMBER 12, 2013

Before WILLIAMS, SYKES, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Plaintiff-Appellant Kenny A. Jones, Sr., alleges that Defendants-Appellees violated his rights under the Fourth Amendment and Fourteenth Amendment. From the first, however, counsel for Jones stated his claims broadly and vaguely. He listed a series of irrelevant facts untethered to any legal claims, and asserted constitutional injury without specifying what provisions of the Constitution were violated and how. Defendants—the City of Elkhart, In-

diana and individual officers in the Elkhart police depart-ment—and the district court were forced to guess at his arguments in order to address them. Unfortunately, on appeal, counsel fashioned his brief in a similar manner, asking us to reverse the district court's entry of summary judgment for Defendants. The argument sections of Jones's brief recite legal standards for the elements of the case but offer us no analysis on how to apply them to the facts at hand.

Once we reconstruct what we believe to be Jones's arguments, as we were required to do under these circumstances, the completed structure shows that both of Jones's substantive assertions hinge on one critical fact: whether the Elkhart police officers who stopped his car and arrested him did so without probable cause. Because the record supports the district court's conclusion that the officers had probable cause and there is no evidence putting that conclusion in question, we affirm the district court's entry of summary judgment and dismiss the appeal. We also find that the district court did not abuse its discretion with regard to the discovery orders or its ruling on Jones's Fourteenth Amendment equal protection claim.

### I.       Factual Background

On October 21, 2008, Kenny Jones attended an evening class at Ivy Tech Community College in South Bend, Indiana. He left class around 7:30 p.m. and then went home, where he had a sandwich and drank a 12-ounce bottle of beer (Bud Light), the only alcoholic beverage he claims he consumed that evening. Shortly thereafter Jones drove to his sister's house in Elkhart. He left the apartment around 1:00 a.m. and drove to a McDonald's, where he purchased some food and ate in his car. Around 1:20 a.m., Jones began driv-

ing south on Nappanee Street, going towards his home in South Bend.

At about 2:15 a.m. on October 22, Lt. Chris Snyder of the Elkhart Police Department initiated a traffic stop of Plaintiff's vehicle for speeding. While traveling northbound on State Road 19 in Elkhart, Snyder observed Jones's vehicle traveling south at a speed above the posted 35 miles per hour speed limit, and confirmed that Jones was traveling at 53 miles per hour with his moving radar, which had been tested with a tuning fork and an internal check both before use and after the traffic stop. Snyder stated that he turned his car and followed Jones's vehicle for a couple of blocks, during which he observed Jones swerving in his lane. He then turned on his emergency lights.

When Jones stopped his car in response to Lt. Snyder's emergency lights, Snyder approached the vehicle and requested Jones's license and registration. Snyder stated that Jones had alcohol on his breath and red, watery eyes. He also observed that Jones's speech was slow and slurred. When asked if he had been drinking, Jones responded that he had consumed one beer at 7:30 p.m.

Officer Bryan Moore arrived on the scene to provide backup. According to Snyder, Moore used Snyder's portable breath test (PBT) device to determine Jones's blood alcohol content (BAC). The PBT showed a BAC of 0.096%. Jones contends that Snyder, not Moore, administered the PBT, and that Jones was never told of the reading on the PBT. Jones also claims that he did not see Moore until after Jones exited his vehicle at Snyder's request.

Snyder stated that he observed that Jones's balance was not steady as he walked from the car to a paved area off the road. Snyder explained and demonstrated a one-leg stand for Jones, and asked if Jones had any medical problems that would prevent him from doing the test. Jones responded that he was extremely bowlegged as a result of a childhood accident in which both legs were broken. When Snyder asked if Jones's condition would prevent him from standing on one leg, Jones answered yes. Snyder then explained and demonstrated a different field sobriety test—the walk and turn test. Jones stated that he did not have any questions regarding the test. When Snyder asked whether anything would prevent Jones from performing the test, Jones stated no and began to perform the test. Snyder noted that Jones could not keep his hands at his sides, that he swayed back and forth, and that he did not touch his heel to his toe for the majority of steps on the two passes.

Snyder then read Jones the Indiana Implied Consent Notice, explaining that he had probable cause to believe that Jones had been operating a motor vehicle while intoxicated. Snyder explained to Jones that while Jones had a choice to submit to the chemical test, there would be consequences to refusing to consent to the chemical test, including suspension of his license. Jones expressed confusion because he had already taken a breathalyzer test.

Jones asserts that he was not speeding because he travels the road on a regular basis and recognizes the area as a speed trap. Although he also states that he makes sure to pay close attention while driving, which presumably includes monitoring his speed, he cannot positively state that his speedometer continually showed a speed of 35 miles per

hour or less. Jones also tries to quibble with the detail of Snyder's location prior to the traffic stop: he claims he drove past Snyder, who was sitting in a vehicle parked off to the side of the road with the lights out. After Snyder and Jones made eye contact and Jones's vehicle passed Snyder, Snyder turned on his headlight, trailed Jones's vehicle for five to six seconds, and then turned on his emergency lights.

Whether Jones consented to the chemical test is in dispute. Snyder states that he placed handcuffs on Jones, but expressed that Jones was not under arrest and was merely being transported to the station for the test, to which Jones had consented. Jones claims that he asked Snyder whether he was under arrest, and that as he was asking follow-up questions about why he was being asked to ride downtown in the squad car, Snyder handcuffed Jones. When Snyder asked Jones whether he was going to take the test, Jones did not answer the question, but expressed frustration over the options being described. Snyder told Jones he was under arrest for suspicion of operating a motor vehicle while intoxicated and refusing a chemical sobriety test ("operating while intoxicated-refusal"). Moore then transported Jones to the station. Further confusion ensued at the station, but those events are not material to the appeal here.

## II. History of Litigation
### A. Claims Raised

Jones sued the City of Elkhart and Officers Snyder, Moore, and Jeff Gorball, as well as Elkhart Police Chief Dale Flibsen. His suit alleges that Snyder unlawfully stopped and seized Jones without probable cause; that Snyder and Moore did not have probable cause to search the vehicle or arrest Jones; that Moore and Snyder conspired to deprive Jones of

his constitutional rights under the Fourth and Fourteenth
Amendments based on racial animus; and that Officer Gor-
ball, who was present at the jail, maliciously and without
probable cause recorded that Jones refused the chemical test
at the police station. As to the City of Elkhart's liability, the
Complaint states:

> On information and belief, the violation of
> plaintiff's Fourth and Fourteenth Amendment
> rights by the defendants was consistent with
> an institutionalized practice of the City of
> Elkhart Police Department, which was known
> to and ratified by defendant City of Elkhart,
> the defendants acted with deliberate indiffer-
> ence, having at no time taken effective action to
> prevent Elkhart Police Personnel from continu-
> ing to engage in such conduct, including stop-
> ping of citizens without probable cause based
> on race.

Based on these facts, Jones appears to raise the following
separate claims:

1. A claim under 42 U.S.C. § 1983 for Fourth Amend-
   ment violations against some combination of Snyder,
   Moore, and Gorball alleging false arrest, excessive
   force, and unlawful search;

2. A § 1983 Fourteenth Amendment equal protection
   claim against Snyder and Moore alleging that they
   made the traffic stop and arrest without probable
   cause based on racial animus, and conspired in ser-
   vice of this violation;

3. A § 1983 claim against the City of Elkhart alleging the existence of a policy or custom that, through arrests without probable cause based on racial animus, inflicts constitutional injury.

Defendants filed a motion for summary judgment that explicitly addressed the false arrest, excessive force, and unlawful search Fourth Amendment claims as well as the conspiracy claim. The summary judgment motion also argued that the *Monell* claim should fail because Jones suffered no constitutional injury.

## B. The Discovery Disputes

Jones claims that he was unable to resolve several discovery issues with Defendants. In pursuit of his theory that the traffic stop was racially motivated, Jones sought production of police reports on warrantless arrests and records of traffic stops. Specifically, he asked to inspect approximately eleven years of records of arrests and traffic stops made by the Elkhart Police Department, encompassing 59,092 arrests and 120,862 citations. Defendants produced an electronic version of data from 2005—including a spreadsheet detailing the age, sex, race, and address of the arrestee, and the nature and date of the arrest—but Jones claims this data was incomplete because it did not include probable cause affidavits, and because Jones had requested to inspect the physical documents. Furthermore, Jones claims that Defendants continually evaded his questions about the existence of the physical documents, until suddenly presenting him with the offer to copy all of the physical documents for a prepayment of $17,955 for the copying expenses.

Defendants claim that they were limited in the information they could provide to Jones because of federal and state laws about the confidentiality of the databases in question. Civilians are barred from accessing the databases Jones requested to use: the Indiana Data and Communications System ("IDACS") and the federal National Crime Information Center ("NCIC"). Defendants also argue that Jones requested an unreasonable volume of data, and that he had refused Defendants' proposed, reasonable methods of narrowing the scope of his discovery request. When Jones had refused to narrow the scope of his requested data at all, Defendants claim they offered to produce physical copies of the documents for the reasonable fee of 10 cents a page.

The magistrate judge denied Plaintiff's motion for order compelling discovery, and granted Defendants' motion to quash the subpoena. The district court also ruled against Plaintiff's motion to reconsider the magistrate's order. The district court's opinion on this matter included lengthy findings affirming Defendants' position that they were prohibited by state and federal law from allowing Jones access to the IDACS and NCIC databases, and that Defendants had proposed reasonable and various methods of narrowing down Jones's request, including a sample CD including more than 7,000 pages of printouts and spreadsheets summarizing information from the electronic reports.

### C.  Summary Judgment

In its order ruling on the motion to reconsider, the district court also ordered Jones to answer Defendants' motion for summary judgment. Jones filed a statement of genuine issues of material fact, which set out the legal claims that Jones intended to pursue. Those issues included:

1. Whether Snyder and Moore wrongfully stopped, detained, searched, falsely arrested and imprisoned Plaintiff to meet patrol division shift minimums for completed traffic citations pursuant to a wide spread practice that although not authorized by written law or express City of Elkhart Policy, was so permanent and well settled at the time as to constitute a custom or usage with the force of law, caus[ing] them to violate Plaintiff's Equal Protection Rights and rights under the Fourth and Fourteenth Amendments to the United States Constitution.

2. Whether probable cause existed for the wrongful stop, detention, search, false arrest and false imprisonment of Jones on October 22, 2008, for speeding, OWI [Operating While Intoxicated] refusal and OWI endangerment.

3. Whether Defendants Snyder and Moore conspired and agreed under color of state law to violate Plaintiff's rights under the Constitution of the United States and under state law.

4. Whether [a] heel to toe sobriety test constitutes deliberate indifference to Plaintiff's physical limitations and denial of due process under the Fourteenth Amendment to the United States Constitution.

5. Whether Jones refused to take [the] chemical test pursuant to the Indiana law for implied consent to test for intoxication.

6. Whether Snyder violated City of Elkhart Police De-
partment policy by not activating his in-car camera at
scene.

7. Whether Snyder, Moore and Gorball acting under
color of state law, violated department policy regard-
ing bias-based profiling/discriminatory practices and
Plaintiff's Equal Protection Rights under the United
States Constitution

(Pl.'s Statement of Genuine Issues of Material Facts in
Opp'n to Defs.' Mot. for Summ. J., 1, 4, 16, 20, 25, 31, 34, ECF
No. 65.)

The district court granted Defendants' motion for sum-
mary judgment on all counts. Jones has appealed the sum-
mary judgment ruling partially, arguing to this court that (1)
the district court abused its discretion in quashing Jones's
subpoena; (2) the district court abused its discretion by
granting summary judgment *sua sponte* on Jones's equal pro-
tection claim; (3) there exist genuine issues of material fact as
to whether the Elkhart police department has policies or cus-
toms that cause constitutional deprivation; and (4) a genuine
issue of material fact exists as to whether Snyder "acted in
good faith" in falsely arresting Jones.

**III.   Analysis**

We review the grant of summary judgment *de novo*,
drawing all reasonable inferences in favor of Jones. *Matthews
v. City of E. St. Louis*, 675 F.3d 703, 706 (7th Cir. 2012). How-
ever, Jones "may not simply rest upon the pleadings but
must instead submit evidentiary materials that 'set forth
specific facts showing there is a genuine issue for trial.'"

*Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoting Fed. R. Civ. P. 56(e)). The evidence Jones presents must be "evidence on which a reasonable jury could rely." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). In submitting these evidentiary materials, Jones "must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel*, 612 F.3d at 937. He must "present definite, competent evidence in rebuttal." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (citing *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004)).

We begin our analysis by clearing the brush as to what matters have been appealed for our review. It is clear to us that Jones did not appeal items 3, 4, 5, 6 and 7 in his list of self-styled genuine issues of material fact; accordingly, those arguments are waived. *See, e.g., Wachovia Secs., LLC v. Banco Panamericano*, 674 F.3d 743, 758 (7th Cir. 2012) (holding that an issue not raised in the opening appellate brief is waived). The discovery issues and the district court's allegedly *sua sponte* judgment on the equal protection claim are discrete and easy to isolate. The claim that Snyder did not "act in good faith" in arresting Jones appears to be asserting that Snyder did not have probable cause in stopping or arresting Jones—an appeal of Genuine Issue Number 2.

But slightly more perplexing is Jones's § 1983 claim against the City of Elkhart. After juggling theories for both alleged Fourth Amendment and Fourteenth Amendment constitutional violations in the district court, Plaintiff states outright in his appellate brief that "[i]n this case the action alleged to be unconstitutional is, [*sic*] the stop, seizure, search and false arrest of Jones in bad faith without probable

cause in violation of the Fourth Amendment." As the brief omits any mention of racial profiling or injury to rights governed by the Equal Protection Clause, we find that Jones has waived the racial profiling claim. *Id.*

The two substantive issues before us, then, are 1) the claim that Snyder lacked probable cause in stopping and arresting Jones, and 2) the claim that the City of Elkhart is liable for constitutional injuries resulting from the stop and arrest of Jones without probable cause. Because on the first issue we find that the record leaves no doubt that there was probable cause for the traffic stop and the arrest, we may dispose of the second issue as well. It is well established that if the plaintiff suffered no violation of his constitutional rights, the City cannot be liable under § 1983. *See Sallenger v. City of Springfield*, 630 F.3d 499, 505 (7th Cir. 2010). As lack of probable cause is the only articulated constitutional violation on appeal, once that violation is defeated, the City cannot be held liable. And, naturally, once we find that the officers had probable cause, they cannot be held liable in their individual or official capacities either.

After analyzing the probable cause issue, we discuss the two ancillary issues: the claim that the district court abused its discretion in issuing its discovery orders, and the assertion that the court improperly ruled *sua sponte* on the equal protection claim.

### A. Probable Cause

We should first address Jones's assertion that the false arrest claim that he appeals here is a "common law false arrest claim," not a § 1983 false arrest claim. In raising a new state law claim grounded in no aspect of the pleadings or the trial

court briefings, Jones seems to be attempting to circumvent the district court's finding of qualified immunity for the police officers. It is a curious and unsuccessful workaround, as we need not even reach the (unappealed) qualified immunity finding to defeat Jones's probable cause argument. In any case, as Indiana requires no different a showing of probable cause than does the federal claim—and as probable cause is an absolute defense to false arrest claims in both the § 1983 context, *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 713–14 (7th Cir. 2013), and the Indiana state context, *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 746 (7th Cir. 2003)—we proceed with a traditional probable cause analysis.

The Fourth Amendment prohibits unreasonable searches and seizures. However, the existence of probable cause renders both traffic stops and resulting warrantless arrests permissible. "Probable cause exists if at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012) (internal quotation marks and citations omitted). "Probable cause … 'is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances.'" *Id*. (quoting *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006)). We objectively "step into the shoes of a reasonable person in the position of the officer," and consider the facts known to the officer at the time. *Id*. (internal quotation marks and citation omitted). We do not consider the subjective motivations of the officer. *Id*.

In the case of Jones, there existed probable cause both for the traffic stop and the arrest. "When a police officer reasonably believes that a driver has committed a minor traffic offense, probable cause supports the stop." *United States v. Garcia-Garcia*, 633 F.3d 608, 612 (7th Cir. 2011) (citations omitted). Officer Snyder had probable cause for the initial traffic stop based on the reading given by his radar gun—which indicated that Jones was traveling well above the posted speed limit in the area, in violation of local traffic rules—as well as the fact that Jones was swerving in his lane. Moreover, Snyder states in an affidavit that the radar gun was tested and checked before and after the traffic stop, with no malfunctions detected.

Jones presents us with no evidence to rebut this showing of probable cause. In his statement of facts, he denies that he was speeding because he was always careful to obey the speed limit when driving on that stretch of road—but this assertion, on its own, does nothing to rebut the fact that Snyder reasonably believed Jones was speeding, or to put into question the accuracy of the radar gun. *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) ("[W]e need only inquire whether the officer had probable cause to believe that a traffic violation occurred, not whether [the driver] actually was tailgating") (internal citation omitted); *United States v. Cashman*, 216 F.3d 582, 586–87 (7th Cir. 2000) (officers' estimate of the fact undergirding a violation need not be "perfectly accurate"; it need only be reasonable for the officer to believe a violation had occurred). Even Jones's quibbles about the location of the squad car fails to rebut the fact that Snyder possessed an objectively reasonable belief that Jones was speeding, based on the reading from his radar gun and his observation of Jones's car. As we stated above, we re-

quire from Jones "definite, competent evidence in rebuttal," *Parent,* 694 F.3d at 922, "evidence on which a reasonable jury could rely," *Goodman,* 621 F.3d at 654. Jones has not presented us with any evidence of this nature here. As there is no documentary evidence rebutting the assertion that Snyder had probable cause, the traffic stop did not violate Jones's Fourth Amendment rights.

Once Officer Snyder had probable cause to conduct the traffic stop of Jones for speeding, he could arrest Jones without violating his Fourth Amendment rights. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *United States v. Childs*, 277 F.3d 947, 953 (7th Cir. 2002) ("A person arrested for an offense punishable only by a fine typically is given a citation (a 'ticket') and released, but *Atwater* holds that the Constitution allows the police to place the person in custody and take him to be booked."). Thus, we need not address whether Officers Snyder and Moore also had probable cause to arrest Jones for OWI-refusal or OWI-endangerment.

However, we note that the facts in the record clearly show that these officers had a reasonable basis to conclude that Jones was intoxicated, and thus had probable cause to arrest Jones for OWI-endangerment. *See, e.g., Qian v. Kautz,* 168 F.3d 949, 953–54 (7th Cir. 1999) (police reasonably surmised that a driver who had difficulty walking, was hunched over, and whose speech seemed slurred had been operating vehicle while intoxicated); *cf. Gutierrez v. Kermon*, 722 F.3d 1003, 1011–12 (7th Cir. 2013) (applying Indiana law and noting "common indicia of intoxication" including "watery or bloodshot eyes," "the odor of alcohol on the breath," "unsteady balance," and "failure of field sobriety tests"). Again, none of Jones's arguments on this point rebuts this

showing of probable cause. A quibble over the identity of the officer administering the PBT does not put in dispute the administration of the test, or the results of the test that indicated Jones's BAC was 0.096%. The assertion that Jones consumed one bottle of beer that evening does not put into question the fact that Jones consumed alcohol that evening. While there might be a question of fact about whether one light beer would cause an accurate registration of 0.096% hours later (though Jones produced no facts of a scientific nature to raise that question), there is not a disputed fact that the machine did register that BAC for Jones. That test result was sufficient to support probable cause for OWI-endangerment.

As for the OWI-refusal charge, in the proceedings below Jones submitted that he was not given adequate opportunity to submit to the chemical test. But we agree with the district court's analysis that despite Jones's subjective confusion over why the police were taking him into custody, the police officers reasonably understood Jones's response to indicate refusal of the chemical test. As Jones presents no evidence suggesting that the officers' understanding that he refused the chemical test was unreasonable, we find that the officers had probable cause to arrest Jones for OWI-refusal.

Because the officers had probable cause for both the traffic stop and the arrest, the false arrest claim is barred, whether it is a § 1983 claim or a state law claim. There is therefore no remaining claim holding the officers liable in their official or individual capacities. Furthermore, as Jones is unable to identify a constitutional injury, the § 1983 claim against the City is also defeated. We conclude that the dis-

trict court correctly granted summary judgment on both claims.

## B. Discovery Matters

Jones claims that the magistrate judge and district court abused their discretion in quashing Plaintiff's subpoena for a large volume of arrest records and traffic citations. However, magistrate and district courts enjoy extremely broad discretion in controlling discovery. A district court may only overturn a magistrate's decision if the decision is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). In turn, we may only review a district court's discovery rulings for abuse of discretion. *Scott v. Chuhak & Tescon, P.C.*, 725 F.3d 772, 784 (7th Cir. 2013) (citing *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996)). The district court does not abuse its discretion "unless one or more of the following circumstances is present: (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Id.* (citing *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629 (7th Cir. 2004)). Furthermore, "we will not reverse a district court's decision concerning discovery absent a clear showing that the denial of discovery resulted in actual and substantial prejudice." *Id.* (internal quotation marks and citation omitted).

None of the circumstances are present here. Jones's brief presents no argument that the record before the district court lacked evidence upon which the court could have based its decision; that the district court's decisions were based on an erroneous conclusion of law or factual findings; or that the

decisions were clearly arbitrary. His only evidence is to simply state that he was "prejudiced by Magistrate's abuse of discretion." We have held that a mere demonstration that the production of discovery items would be helpful is not sufficient to reverse a discovery order as prejudicial. *Scott*, 725 F.3d at 784. "Without any references to legal authorities or any statement that generously could be considered legal argumentation," Jones "has given us no reason to reverse." *Id.*

### C. *Sua Sponte* **Ruling on Equal Protection Claim**

Jones asserts that the district court ruled *sua sponte* on the equal protection claim. Because Defendants did not brief the equal protection argument in their summary judgment brief, Jones argues, the district court's grant of summary judgment on the issue constitutes impermissible *sua sponte* conduct.

This assertion inadvertently bolsters our earlier complaint about the style and substance of Jones's briefs. It is not difficult to see why Defendants had difficulty grappling with the legal claims in play in this case. The complaint is drafted in broad, generalized strokes. It is true that the most generous possible reading of the complaint would yield the conclusion Jones's complaint does make a conclusory suggestion of an equal protection claim, and with the benefit of hindsight we are able to make out the pieces of the complaint that would support such a claim. But it is by no means a clearly presented argument to which Defendants failed to respond, either out of irresponsible lawyering or some tactical decision to conceal the equal protection claim.

Our decision is made easier, however, because the district court noted Defendants' omission when ruling on

Jones's motion to reconsider the magistrate's denial of his motion to compel discovery, which ruling was made before Jones had filed his response to the summary judgment briefs. Defendants had an adequate opportunity to respond to this new argument. That is, this was by no means a true *sua sponte* decision in which the judge "decide[s] [a] suit[] without warning on the basis of considerations the litigants were not contesting." *Pactiv Corp. v. Rupert*, 724 F.3d 999, 1001 (7th Cir. 2013). Indeed, Plaintiff raised the issue in his briefing on the motion to compel. The court took note of this dispute, observed that the equal protection claim "hinge[s] … in part, on the fact that his traffic stop and arrest occurred without any probable cause," and ordered Jones to answer the summary judgment motion, which had been filed by the Defendants prior to the motion to compel. Plaintiff and Defendants both briefed the equal protection issue, in the opposition brief and the reply brief in support of the summary judgment motion, respectively. Accordingly, we do not find evidence of any impropriety on the part of the district court. The court provided the litigants with notice of the issue and an opportunity to brief it; that is all that the Federal Rules require it to do in granting summary judgment for an issue not raised by the initial summary judgment brief. *Id.* (quoting Rule 56(f)).

## IV.    Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for the Defendants.