In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1763

TRACY WILLIAMS,

*Plaintiff-Appellant,*

*v.*

BRANDON BROOKS, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-CV-1592 — **Jane E. Magnus-Stinson**, *Judge.*

ARGUED DECEMBER 4, 2015 — DECIDED JANUARY 5, 2016

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* Defendant Officer Brandon Brooks conducted a traffic stop of plaintiff Tracy Williams for failing to activate his turn signal prior to changing lanes. Williams did not cooperate with the instructions of Officer Brooks and Defendant Officer Kehl, which led to a physical confrontation. Defendant Sergeant Shannon Trump then arrived at the scene. Officer Brooks arrested Williams for resisting law enforcement, and after a bench trial, a state court judge granted

Williams's motion to dismiss the charge. Williams sued defendants in federal district court pursuant to 42 U.S.C. § 1983, alleging false arrest, excessive force, and failure to protect in violation of the Fourth Amendment. The district court granted defendants' motion for summary judgment. We affirm.

## I. Background

### A. Factual Background

The facts presented here are taken from the videotape evidence of the incident, the officers' affidavits, and Williams's deposition testimony.

On October 5, 2011, at approximately 1:15 AM, Officer Brooks of the Noblesville, Indiana Police Department observed Williams's vehicle pull into the left turn lane without signaling his lane change. Williams later testified in a deposition that his normal habit is to signal as he enters a turn lane but that he had no present memory of activating his turn signal on this specific night. Once Williams was in the left turn lane, he activated his turn signal and made a left turn. Officer Brooks turned on his police vehicle's overhead lights, which triggered his dashboard camera. Williams pulled into a gas station parking lot, and Officer Brooks pulled in behind him. Officer Kehl also arrived at the scene.

When Officer Brooks approached Williams's vehicle, Williams's window was only rolled down two inches. Officer Brooks asked Williams to lower his window, and Williams rolled it down approximately one more inch. Based on his training and experience, Officer Brooks knew that this was common behavior for intoxicated persons attempting to pre-

vent officers from smelling their breath or the inside of their cars.

After telling Williams that he had been pulled over for failing to signal before changing lanes, Officer Brooks asked for his license and registration. He also asked Williams whether he had been drinking, and Williams said he had not. Officer Brooks said, "You're acting like you kind of have an attitude with me right now. Like I pulled you over for no reason." Williams responded that he normally puts his turn signal on and that it had been a long day. Officer Brooks took Williams's license and registration, told Williams to "hang tight," and said he would be right back.

Officer Brooks returned to his police vehicle, ran Williams's license plate and registration, and did not find any problems. He decided to issue Williams a warning for his failure to signal. Officer Brooks told Officer Kehl that he could leave the scene.

As Officer Brooks exited his vehicle to give Williams the warning ticket, Williams stepped out of his vehicle and started walking toward the center of the gas station. Officer Brooks had never encountered a person getting out of his vehicle during a traffic stop. Additionally, he had learned in training that being away from his vehicle without cover is one of the most vulnerable positions for an officer during a traffic stop. Williams is significantly larger than Officer Brooks: Officer Brooks is 5'9 and 170 pounds, and Williams is 6'3 and 195 pounds. Officer Brooks asked Williams to get back in his car, but Williams ignored him. Officer Brooks repeated this command six more times. Williams did not comply until Officer Brooks drew his taser.

Officer Brooks radioed Officer Kehl to return to the scene. He asked Williams why he would get out of his car during a traffic stop, and Williams responded that he wanted to get a paper towel to clean his side mirror. Officer Brooks again asked Williams if he had been drinking, and Williams again responded that he had not.

Because Williams had exited his vehicle and because of his demeanor, Officer Brooks believed that Williams might be intoxicated or otherwise mentally impaired. He decided to perform a pat down search followed by a field sobriety test. He asked Williams to step out of his car at least six times before Williams complied. Williams finally exited his vehicle and stood facing Officer Brooks.

For safety reasons, Officer Brooks wanted Williams against the car so that he could not reach into his pockets during the pat down. He pointed in the direction of Williams's car and said, "Face that way for me." Williams did not comply. Instead, he took a step toward Officer Brooks and asked for a breathalyzer. Officer Brooks again said, "Face that way for me, turn around," and grabbed Williams's right arm and pushed him toward his car. Williams pushed against the car with his left hand and backed into Officer Brooks. Williams said, "If you're going to do this, you're going to visit with my attorney, son." Officer Brooks instructed Williams to stop resisting. Williams said, "I'm not resisting," but again pushed against the car with his left hand back toward Officer Brooks.

Officer Brooks radioed Officer Kehl to "step it up a little bit." He tried to get both of Williams's hands behind his back, but Williams kept pushing against Officer Brooks. Officer Brooks pushed against Williams as Williams leaned in-

to him. Williams hit the side of the car three times during the struggle.

At this point, Officer Kehl arrived at the gas station. Williams pulled his hand free of Officer Brooks's grip and spun around to face Officer Brooks. As Williams pushed Officer Brooks away and threw an elbow at him, Officer Brooks backed up and drew his taser on Williams. Williams took a step toward Officer Brooks, and Officer Brooks instructed Williams to turn around. Williams ignored the command. Officer Brooks repeated it several times and told Williams to put his hands above his head. Williams did not turn to face his vehicle but instead made a 360-degree turn so that he was still facing Officer Brooks. He briefly put his hands above his head and said, "What do you want from me?"

Officer Kehl approached Williams and ordered him to turn around. After Williams ignored two more commands to turn around, Officer Kehl grabbed Williams and turned him so he was facing his car. He ordered Williams to put his hands behind his back multiple times. Williams did not comply, so Officer Kehl pulled his hands behind his back and handcuffed him. Williams said, "Guys, this is going to be really bad. You're going to put me in handcuffs? For what? This is going to be a really bad video for you guys." Officer Kehl responded that he saw Williams assault Officer Brooks, and Williams denied having done so.

Officer Brooks proceeded to pat down Williams. Officer Brooks asked Williams again if he had been drinking that night. Williams said, "I've told you no several times. Why do you keep asking me?" Officer Brooks replied, "Because normal people that haven't been drinking don't act like you're acting right now." Williams said that it had been a long day

at work. Officer Brooks put Williams in the back seat of his police vehicle. Williams complained that his handcuffs were uncomfortable on his wrists, and Officer Kehl responded that they were not supposed to be comfortable.

Shortly thereafter, Sergeant Shannon Trump, the shift supervisor that evening, came to the scene and spoke with Williams. Williams said Officer Brooks was "very hostile and aggressive," claimed he did not know why Officer Brooks had pulled him over, and alleged that he had complied with everything Officer Brooks asked of him. When Sergeant Trump asked Williams if Officer Brooks had told him not to walk away from the car and if Williams had not listened to him, Williams responded that Officer Brooks had given him contradictory messages by first telling him to stay in the car and then telling him to get out of the car. Williams again complained about his handcuffs and asked Sergeant Trump to remove them, but she declined. Sergeant Trump asked Williams if he would be willing to take a field sobriety test, and he agreed. Officer Brooks administered a field sobriety test. Williams also consented to a breathalyzer, which registered a zero percent reading for blood-alcohol level.

Sergeant Trump reviewed the video of the incident and found that Williams had resisted law enforcement and that Officer Brooks had acted appropriately.

### B.  Procedural Background

Williams was arrested and charged with resisting law enforcement, a Class A misdemeanor under Indiana law. Ind. Code § 35-44-3-3(a)(1) (repealed 2012). On March 20, 2012, Williams signed a diversion agreement, wherein he "admit[ed] the truthfulness of the charges against [him]" and

acknowledged that "such admission may be used against [him] if there is a resumption or prosecution of these charges by reason of termination from the pretrial diversion program." A condition of the diversion agreement was that Williams complete anger management training. Williams did not fulfill this condition, so the State revoked the agreement, and the case went to a bench trial in Hamilton County Criminal Court on April 25, 2013. The State presented the video of the incident and the testimony of Officer Brooks. The state court granted Williams's motion to dismiss the resisting law enforcement charge.

On October 4, 2013, Williams filed suit in federal district court against Officer Brooks, Officer Kehl, and Sergeant Trump. Williams asserted the following Fourth Amendment claims pursuant to § 1983[1]: unlawful stop and arrest claims against Officer Brooks and Officer Kehl, an excessive force claim against Officer Brooks, and failure to protect claims against Officer Kehl and Sergeant Trump. Williams alleged that he suffered from back pain and digestive problems from being pushed against the car, but he stated in a deposition that he was not taking aspirin or other medication and that he did not seek medical treatment aside from one appointment for x-rays, which did not reveal any injuries.

After the close of discovery, the district court granted defendants' motion for summary judgment, holding that Officer Brooks reasonably concluded that Williams had en-

---

[1] 42 U.S.C. § 1983 states: "Every person who … subjects … any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress … ."

gaged in a traffic violation justifying the traffic stop. Because
Officer Brooks could arrest Williams for the traffic violation,
the arrest for resisting law enforcement was constitutionally
permissible. The court also found that the arrest for resisting
law enforcement was independently supported by probable
cause. Additionally, the court found that Officer Brooks's use
of force was reasonable given the circumstances and that no
reasonable jury could find otherwise. Since the court found
that neither Officer Brooks nor Officer Kehl violated Wil-
liams's constitutional rights, it concluded that the failure to
protect claims failed as a matter of law. Also relevant to this
appeal, the district court concluded that it was not bound by
the state court judge's findings and briefly referred to the di-
version agreement. Williams appeals.

## II. Discussion

We review de novo the district court's grant of summary
judgment, construing all facts in the light most favorable to
the nonmoving party. *Harper v. C.R. England, Inc.*, 687 F.3d
297, 306 (7th Cir. 2012). However, we will not draw infer-
ences that are "supported by only speculation or conjecture."
*Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)
(citation and internal quotation marks omitted). Summary
judgment is proper when "there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a). A material fact is one that
"might affect the outcome of the suit … ." *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A twist on the usual standard of review is at play here:
When the evidence includes a videotape of the relevant
events, the Court should not adopt the nonmoving party's
version of the events when that version is blatantly contra-

dicted by the videotape. *Scott v. Harris*, 550 U.S. 372, 379–80 (2007). Accordingly, we rely primarily on the video from the dashboard camera of Officer Brooks's vehicle. Williams argues that relying on the video is improper because the video is ambiguous, creating a factual dispute that should go to a jury. We disagree. The video clearly depicts the incident.

On appeal, Williams raises three main arguments. First, he argues that there are material questions of fact as to the unlawful stop and arrest claims, excessive force claim, and failure to protect claims. Next, he argues that the district court erred in not considering the state court's findings. Finally, Williams argues that the district court improperly used and relied on the pretrial diversion agreement.

## A. Genuine Disputes of Material Fact

### 1. Unlawful Stop and Arrest

Williams argues that there is a genuine issue of material fact as to whether he committed a traffic infraction such that Officer Brooks had probable cause to stop and arrest him. The Fourth Amendment prohibits unreasonable searches and seizures, but the existence of probable cause renders traffic stops and resulting warrantless arrests permissible. *Jones v. City of Elkhart*, 737 F.3d 1107, 1114 (7th Cir. 2013) (noting that probable cause is an absolute defense to false arrest claims in § 1983 actions). "When a police officer reasonably believes that a driver has committed a minor traffic offense, probable cause supports the stop." *Id.* (citation and internal quotation marks omitted); *see also United States v. Hernandez-Rivas*, 513 F.3d 753, 759 (7th Cir. 2008) (concluding that when an officer observes a vehicle changing lanes without signaling, the officer has probable cause for a traffic stop). Addi-

tionally, it is "not a violation of the Fourth Amendment to arrest an individual for even a very minor traffic offense." *Jackson v. Parker*, 627 F.3d 634, 639 (7th Cir. 2010); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 323 (2001) (holding that the Fourth Amendment does not forbid "a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine").

Officer Brooks testified that he initiated Williams's traffic stop because he observed Williams violate Indiana Code § 9-21-8-25 by failing to signal before changing lanes.[2] Williams argues that his deposition testimony that his habit is to put his turn signal on as he enters a turn lane is enough to prove that he complied with the law. This argument is unconvincing. Williams did not testify that he signaled on the night in question. Rather, he said that he did not have a present memory of putting on his turn signal before changing lanes. He stated, "I wasn't consciously thinking of [putting on my turn signal] that night" and also said, "I'm human. I'm fallible. I mean, I could have maybe forgot to turn my signal on." Given the testimony of Officer Brooks and Williams, Williams's statement about his normal habit is not enough for us to infer that he signaled this particular lane change. *See Jones*, 737 F.3d at 1114 (noting that plaintiff's assertion that he usu-

---

[2] Indiana Code § 9-21-8-25 provides:

> A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes. A vehicle traveling in a speed zone of at least fifty (50) miles per hour shall give a signal continuously for not less than the last three hundred (300) feet traveled by the vehicle before turning or changing lanes.

ally does not speed was not enough to rebut the officer's statement that he saw plaintiff swerving and that his radar gun indicated that plaintiff was speeding, when plaintiff could not positively state that he was not speeding on the day in question and did not offer any evidence on which a reasonable jury could rely); *Argyropoulos*, 539 F.3d at 734 (noting that inferences based on speculation or conjecture are beyond the scope of our obligation to draw reasonable inferences in favor of the nonmovant). Thus, Officer Brooks's testimony that he saw Williams change lanes without signaling establishes probable cause for the traffic stop, and Officer Brooks could lawfully arrest Williams for this traffic infraction. No reasonable jury could find that this was an unlawful stop and arrest.

Williams's next argument is that Officer Brooks did not have probable cause to arrest him for forcibly resisting law enforcement. This argument fails because once Officer Brooks had probable cause to conduct the traffic stop, Officer Brooks could arrest Williams without violating the Fourth Amendment, even if Williams was not resisting law enforcement. *See Jackson*, 627 F.3d at 638–39 ("[A]n arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that *some* criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect." (alteration and emphasis in original) (citation and internal quotation marks omitted)); *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007) (holding that since the officer had probable cause to arrest plaintiff for a parking offense in violation of an Illinois

statute, the officer could arrest plaintiff for driving under the influence without violating his Fourth Amendment rights).[3]

Finally, Williams briefly argues that Officer Kehl participated in and facilitated the unlawful arrest when he shoved and handcuffed Williams. He alleges that Officer Kehl knew or should have known that Officer Brooks did not have a sufficient basis to stop or arrest Williams. Since we have already concluded that a reasonable jury must find that Officer Brooks had probable cause to stop and arrest Williams, this argument fails. Officer Brooks and Officer Kehl are entitled to judgment as a matter of law on the unlawful stop and arrest claim.

---

[3] We briefly note that a reasonable jury must also find that Officer Brooks had probable cause to arrest Williams for resisting law enforcement in violation of Indiana Code § 35-44.1-3-1. Under this statute, "[a] person who knowingly or intentionally: (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties … commits resisting law enforcement, a Class A misdemeanor … ." Williams argues that he did not forcibly resist but rather "leaned away and twisted in pain." However, the video blatantly contradicts these allegations. The video shows that Williams was uncooperative and ignored many commands from Officer Brooks. Williams forcefully pushed against Officer Brooks, using his arms to push away from the car and backing his body into Officer Brooks, preventing Officer Brooks from conducting a pat down search and conducting a field sobriety test. These actions are enough to establish probable cause for arrest. *See Lopez v. State*, 926 N.E.2d 1090, 1093–94 (Ind. App. 2010) (holding that defendant forcibly resisted arrest when he refused to stand to be cuffed, pulled away from officer's attempts to pull him up from the couch, and physically prevented officers from pulling his arms from under him as he lay on the ground).

### 2. *Excessive Force*

Williams argues that Officer Brooks used excessive force and injured Williams by pushing him against the car during his arrest.[4] "An officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest … ." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (citation omitted). That right is circumscribed by the Fourth Amendment's reasonableness standard. *See id.* Factors relevant to the reasonableness inquiry include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted). We "remain cognizant of the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Abbott v. Sangamon Cty.*, 705 F.3d 706, 724 (7th Cir. 2013) (citation and internal quotation marks omitted).

Under the first *Graham* factor, the initial infraction—failing to signal before changing lanes—was not a significant violation. However, resisting law enforcement is a more serious offense. Under the second factor, Williams posed an

---

[4] On appeal, Williams also attempts to raise an excessive force claim against Officer Kehl. However, the district court correctly held that this claim was waived since Williams did not assert it until his response to defendants' motion for summary judgment. *See Hancock v. Potter*, 531 F.3d 474, 480 (7th Cir. 2008) (declining to reach the substance of a claim that plaintiff did not allege in her complaint and raised for the first time in her opposition to defendant's motion for summary judgment).

immediate threat to Officer Brooks when he got out of his vehicle during the traffic stop and refused six commands to get back in the car, especially since Officer Brooks was in a vulnerable position away from his police vehicle and without cover. Additionally, Williams was acting strangely and resisted Officer Brooks's attempts to conduct a pat down search, creating safety concerns. Under the third factor, Officer Brooks had probable cause to believe that Williams was actively resisting arrest. Thus, a reasonable jury must find that Officer Brooks used a reasonable amount of force.

Williams argues that we must infer that Officer Brooks intended to hurt Williams. However, an officer's intent is irrelevant. In analyzing the use of force, we assess the reasonableness "without regard to [the officer's] underlying intent or motivation." *Smith v. City of Chicago*, 242 F.3d 737, 743 (7th Cir. 2001) (citation and internal quotation marks omitted). Additionally, the record does not support this inference. Even when reviewing a grant of summary judgment, we will not draw inferences that are "supported by only speculation or conjecture." *Argyropoulos*, 539 F.3d at 732 (citation and internal quotation marks omitted).

### 3. Failure to Protect

Williams alleges that Officer Kehl and Sergeant Trump failed to intervene and protect Williams from Officer Brooks. Since no reasonable jury could find that Officer Brooks violated Williams's constitutional rights, this argument must fail.

### B. The State Court's Findings

Williams argues that the district court erred as a matter of law by not giving that state court's findings any control-

ling or preclusive weight. At the end of the state court trial, Williams moved to dismiss the charge against him for resisting law enforcement, arguing that the state did not prove its case beyond a reasonable doubt. The state court judge granted the motion and said: "[I]t's pretty clear that the officer is not attempting to pat down … . What the officer is doing is attempting to get both of the Defendant's hands behind his back, apparently for the purpose of handcuffing him." The state court judge also stated that the officers "had no basis that I heard in my record for handcuffing."

Williams argues that the state court's dismissal of the charge should have been binding on the district court. In other words, he argues that the district court should have found—based on the state court's dismissal—that Williams did not resist law enforcement and therefore, the arrest for resisting law enforcement was unlawful.

Williams's argument misstates the law. "Evidence of acquittal in a criminal action is generally irrelevant and inadmissible in a civil case involving the same incident since it constitutes a negative sort of conclusion lodged in a finding of failure of the prosecution to sustain the burden of proof beyond a reasonable doubt." *Estate of Moreland v. Dieter*, 395 F.3d 747, 755 (7th Cir. 2005) (citation and internal quotation marks omitted). Therefore, the district court correctly decided that it was not bound by the state court's findings. Additionally, even if the district court adopted the state court's finding that Williams did not resist law enforcement, it would be irrelevant to his unlawful arrest claim. As explained above, a reasonable jury must find that since Officer Brooks had probable cause for the traffic stop, he could ar-

rest Williams—for the traffic infraction or for resisting law enforcement—without violating the Fourth Amendment.

Next, Williams argues that the contrast between the state court's and the district court's findings demonstrates that there is a genuine issue of material fact that should go to a jury. The state court found that Officer Brooks had acted inappropriately by trying to handcuff Williams, whereas the district court found that Officer Brooks's actions were lawful. However, this argument fails because the factual dispute about whether Officer Brooks was trying to conduct a pat down or trying to handcuff Williams does not create a genuine issue of *material* fact. A material fact is one that "might affect the outcome of the suit … ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The outcome of Williams's suit against the officers is not affected by whether or not Officer Brooks was trying to handcuff Williams. Even if Officer Brooks was attempting to handcuff Williams, that action would have been lawful, and no reasonable jury could find otherwise. Since Officer Brooks had probable cause to stop and arrest Williams, he could handcuff Williams without violating the Fourth Amendment. Thus, the district court properly decided not to consider the state court's findings.

## C. The Diversion Agreement

Williams's final argument is that the district court improperly used and relied on the pretrial diversion agreement in violation of Federal Rule of Evidence 408. Rule 408 states that evidence of "accepting … valuable consideration in compromising … the claim" is inadmissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction[.]" Fed. R. Evid. 408. This argument is unconvincing be-

cause the district court did not rely on the diversion agreement in granting summary judgment.

The district court only briefly referred to the diversion agreement. The court noted that defendants pointed to the agreement to support their claim that Williams was resisting law enforcement. The court also noted Williams's argument that the agreement is not admissible. Without ruling on the admissibility of the diversion agreement and without mentioning it further, the district court granted summary judgment in favor of defendants. Thus, the district court did not rely on the diversion agreement to prove the validity of a claim—namely, defendants' claim that Officer Brooks had probable cause to believe that Williams was resisting law enforcement—or to impeach Williams with a prior inconsistent statement.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's decision.