NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 21, 2021[*]
Decided January 22, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 19-3185

| | |
|---|---|
| ANTONIO MARQUES SMITH, <br> *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 17-cv-668-pp |
| KERRY TURNER, et al., <br> *Defendants-Appellees.* | Pamela Pepper, <br> *Chief Judge.* |

## O R D E R

While in pretrial detention, Antonio Smith was searched by corrections officers who suspected him of hiding contraband. Smith brought this suit under the Fourteenth Amendment against the officers for using excessive force during the search and then subjecting him to an unwanted touching of his private parts. *See* 42 U.S.C. § 1983. The district court granted the defendants' motion for summary judgment. On appeal Smith argues that the district court failed to construe the evidence in his favor. We affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Smith was in pretrial detention at Milwaukee County Jail when officers swept his cell pod for contraband. Smith, who was subject to a court order preventing him from using "electronic means" of communication, was being held on "maximum custody status"—a designation that limited him to a minimal number of essential belongings. The officer assigned to Smith's pod saw him place an item into his underwear and reported it to Lieutenant Kerry Turner.

A security camera recorded the searches that followed. First, officers Dominique Smith and Maurice Slocum ordered Smith to come out of his cell so that it could be searched. Smith ignored them. They called for assistance, and more officers—including Ocell Carr and Michael Zetting—arrived. Smith eventually relented and allowed the officers to handcuff him and remove him from the cell. After his cell was searched, two officers initiated a pat-down and felt a hard bulge near his groin. Smith denied that he was hiding anything. Officers then pinned him to the outside wall of his cell, where Officer Smith again patted him down and felt a hard object. Smith remained pinned for several minutes and struggled when Slocum neared his groin area. A second lieutenant then arrived and persuaded Smith to remove the object from his pants. It was a sock containing a radio, a pack of batteries, and pencils.

Smith complained to nurses later that day and the next of testicular tenderness and a broken wrist. A physical examination and x-rays revealed no injuries, and he was given acetaminophen for soreness. He told a counselor that officers had sexually assaulted him during the search. A detective investigated and, after reviewing a video recording of the search and speaking to Smith and the pertinent officers, determined that Smith's allegations were not supported by the evidence.

Smith sued the officers for violating his Fourteenth Amendment rights as a pretrial detainee. Specifically, Smith asserted that four of the officers—Slocum, Smith, Zetting, and Carr—used excessive force when they smashed his head against the wall, bent his fingers back, and suspended him from his cell door by his restraints; that officers Smith and Slocum sexually assaulted him by squeezing his testicles and yanking his penis when they patted him down; and that Turner failed to intervene.

The district court granted the defendants' motion for summary judgment. The court determined, based on its review of the video recording, that no reasonable jury could conclude that the force used by the officers was excessive. The video recording, the court found, did not support Smith's contention that he was slammed into the wall or door, or that he was suspended by the restraint system. As for the claim of unwanted

sexual touching, the court concluded that no jury could find that any touching by the officers was anything but incidental to the search, particularly given Smith's resistance (i.e., twisting and scuffling) as captured on the video. And the court rejected Smith's failure-to-intervene claim on grounds that there was no underlying constitutional violation for which the lieutenant should have intervened.

On appeal, Smith challenges the court's ruling on his excessive-force claim and argues that the court erred by giving more weight to the video recording than other evidence in the record. According to Smith, the recording captured only a partial view of the incident. More illuminating, he maintains, are the internal investigation report, which, he says, contains admissions that excessive force was used; and his medical records, which he offered as proof that he was physically injured in the encounter.

The district court appropriately granted summary judgment on this claim. To the extent Smith's account is "blatantly contradicted" by the video, we do not credit his version of events. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016). The video does not show that officers smashed his head against the wall, bent his fingers back, or suspended him from his restraints. Although the video does show Smith cupping his groin area and resisting the pat-down while pressed up against a wall, none of the officers' actions appears either punitive or "excessive in relation" to the legitimate purpose of the search. *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (citation omitted); *see Brown v. Polk Cnty.*, 965 F.3d 534, 539 (7th Cir. 2020). The other evidence cited by Smith is not probative: the officers' interviews in the investigation report contain no admissions of wrongdoing, and Smith's medical records reflect no diagnosed physical injury to support an inference of excessive force.

Regarding his claim of unwanted sexual touching, Smith argues that the court again over-relied on an inconclusive video and overlooked details in his medical records and the officers' interviews that would justify the inference that officer Smith and Slocum pruriently touched him. But the district court did not err in granting summary judgment on this claim. As the court explained, even if the facts were taken in the light most favorable to Smith, the instances of unwanted touching did not rise to the level of a constitutional violation. Nothing in the investigation report or medical records reflects that either of the two officers touched his private parts to humiliate him or to gratify their own sexual needs. *Cf. Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (reversing summary judgment where prison guard spent five to seven seconds gratuitously fondling the prisoner through his clothing and then during a strip search

fondled his nude testicles for two or three seconds). Although Smith speculates that the officers had reason to humiliate him based on his behavioral issues and his physical resistance to the search, his conjectures about the officers' motives do not create a reasonable inference that they acted with the intent of humiliation or self-gratification. *Id.* Rather, the undisputed evidence suggests that any touching of Smith's genitals was incidental to the search for contraband that he was hiding in his underwear.

Finally, Smith generally challenges the court's ruling on Turner's failure to intervene. But absent an underlying violation, this argument fails. Since no reasonable jury could find that officers subjected Smith to excessive force or sexually assaulted him during the search, "by definition . . . there can be no failure to intervene." *Turner v. City of Champaign*, 979 F.3d 563, 571 (7th Cir. 2020).

AFFIRMED