NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 18, 2021[*]
Decided November 19, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 21-1533

| | |
|---|---|
| ROMEO S. HENNINGS, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 19-C-1304 |
| ANTHONY MILONE, *Defendant-Appellee*. | Lynn Adelman, *Judge*. |

**O R D E R**

Driving recklessly through Milwaukee, Romeo Hennings, whose car matched one just seen in an armed robbery, led police on a high-speed car chase. He was arrested after crashing his car, injuring several people, and trying to flee on foot. He sued the arresting officer, Anthony Milone, under 42 U.S.C. § 1983, alleging that Milone

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

used excessive force when he pulled and punched Hennings to stop him from fleeing. The district court entered summary judgment for Milone, concluding that the force was reasonable. Given that the underlying crime (reckless driving) was serious, Milone had reason to believe that Hennings might be armed, and Hennings did resist arrest and attempt to flee, we conclude that Milone's use of force was reasonable and affirm.

Late that night, Milone joined the pursuit of Hennings who was driving a car that matched the description of one that had been used in an armed robbery an hour earlier. Police cameras captured most of the chase and arrest. Hennings fled from the police at speeds sometimes over 100 miles per hour until he crashed into a taxi, injuring some of the occupants. Milone and his partner were the first to arrive at the wreck. Milone ran toward the car while his partner chased after another person running from the crash. Suspecting that the driver could be armed, Milone approached the car's driver-side with his gun drawn, yelling that he was "going to shoot." Hennings swears that, in response, he placed his hands on the steering wheel to show compliance. Milone counters that he could not see Hennings's hands through the car's airbags, though he could see Hennings's body move toward the center console. Regardless, within seconds, Hennings feet were outside the passenger-side door—opposite Milone. Fearing that Hennings was trying to flee, Milone holstered his gun, reached in the driver's side, and grabbed Hennings by his hair, yelling for other officers to help. In the scuffle of the next few seconds, Milone told Hennings not to flee and tried to pull him out of the car on the driver's side by holding his hair and punching him in the head. Hennings said "stop, aye, aye, aye . . . man stop." After about 25 seconds, Hennings broke free of Milone and bolted from the car's passenger side. He stumbled, and another officer took him to the ground.

After a struggle on the ground, Hennings was arrested. He says that he resisted because he feared for his safety after the encounter with Milone. Milone handcuffed him, exclaiming, "It's on camera you almost killed somebody." Hennings alleged that the handcuffs were "smashed on." The officers kept Hennings pinned to the ground until about a minute later, when Hennings said that he couldn't breathe and had severe asthma. One officer turned him on to his side to coach his breathing; afterward another group of officers took him to a squad car. Hennings was later taken to a hospital and treated for his injuries from the crash and its aftermath. The injuries included blunt trauma to his abdomen, a closed head injury, chest contusions, and a strained wrist.

Hennings sued Milone, asserting that during the arrest he used excessive force in violation of Hennings's Fourth Amendment rights. The district court entered summary

judgment for Milone, ruling that as a matter of law the force was reasonable. It relied on the video recordings—which showed that Milone used nondeadly force to restrain a fleeing suspect believed to be armed who had recklessly endangered others.

Hennings appeals, but we agree with the district court that no reasonable jury could conclude that Milone's use of force was unreasonable under the circumstances. See *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016). A court assesses reasonableness under the Fourth Amendment by looking to the totality of the circumstances, including: (1) the seriousness of the crime at issue, (2) whether the suspect poses a threat (Hennings does not contest that Milone reasonably believed that he was armed), and (3) whether the suspect is resisting or fleeing arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)). Based on this standard and the undisputed facts, Milone's use of force was reasonable: Milone was responding to a dangerous car chase and a possible robbery; Milone reasonably thought that Hennings might be armed; and Hennings had resisted arrest and appeared ready to flee again. See *id.*; *Turner v. City of Champaign*, 979 F.3d 563, 567 (7th Cir. 2020).

Hennings replies that a reasonable jury could have found that the force was unreasonable because, in his view, he twice demonstrated an intent to surrender. He asserts that he first did so when he placed his hands on the steering wheel as Milone came to the car; the second time, he stated, was when he said "stop, aye, aye, aye . . . man stop," as Milone grabbed him through the car window.

True, a display of genuine surrender can render a use of force excessive, *Johnson v. Scott*, 576 F.3d 658, 659 (7th Cir. 2009), but a reasonable jury could not find that a reasonable officer in Milone's position had to know that Hennings was surrendering. First, even if we credit Hennings's account that he placed his hands on the steering wheel, the video recording shows that he also moved his feet out of the passenger side of the car, away from Milone. In ruling on a motion for summary judgment, a court must view disputed facts in the light most favorable to the nonmoving party, but it also considers "the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380, 381 (2007); see also *Williams*, 809 F.3d at 942. This recording thus shows that Milone had legitimate reason to fear that Hennings, far from surrendering, was trying to run away. Second, Hennings's cry for Milone to "stop" was simply a protest of Milone's attempt to subdue him, not an acquiescence to it. Thus, a finding that Milone knew that Hennings was surrendering would be unreasonable on these facts. *See Dawson v. Brown*, 803 F.3d 829, 834 (7th Cir. 2016) (nonmoving party is entitled only to *reasonable* inferences).

We also conclude that a jury could not find that the force Milone used briefly to subdue Hennings during the fast-paced events—grabbing his hair and punching him—was unreasonable. Hennings had likely committed a serious offense (recklessly driving), he might be armed, and he appeared to be trying to flee arrest. Milone's quick decision to grab a reachable, non-threatening part of Milone's body to quell him, protect himself and others, and prevent flight could not be found to be unreasonable. See *Graham*, 490 U.S. at 396. This case, thus, differs from those involving hair-grabbing where the underlying offense was minor or the suspect was harmless, compliant, or already restrained. See *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016) (reversing grant of motion for summary judgment for officers who, in response to a suspended-license offense, pulled driver out of car window by hair); *Smith v. Ray*, 781 F.3d 95, 103 (4th Cir. 2015) (affirming denial of motion for summary judgment where officer ripped out plaintiff's hair when she was compliant and handcuffed).

Hennings also argues that the district court erred by not considering two sets of facts that he believes are relevant to whether the force was excessive. The first is the severity of his injuries. True, the injuries that arise from the use of force during an arrest may be relevant to the reasonableness of force. *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) (citing *Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008)). But the district court did not ignore these injuries; rather, it listed and considered them, then correctly ruled that the force used was objectively reasonable based on the totality of the circumstances, including the injuries. See *Graham*, 490 U.S. at 396. Furthermore, Hennings does not identify which of his injuries resulted from the force that Milone used after Hennings's crash, as opposed to from the crash itself. Finally, although Hennings argues that Milone "smashed on" the handcuffs, no evidence suggests that any injury arose from the cuffs.

Second, Hennings argues that, to assess the reasonableness of the force, the district court needed to consider Milone's post-arrest statement to Hennings: "It's on camera that you almost killed somebody." Hennings contends that a reasonable jury could infer from a statement like this that Milone's use of force was retaliatory. But under the Fourth Amendment, an officer's subjective intent in using force is irrelevant "[o]nly its reasonableness matters." *Richman v. Sheahan*, 512 F.3d 876, 882 (7th Cir. 2008). Because the record compels the conclusion that the force was reasonable, Milone's intent does not matter.

We have considered Hennings's other arguments, and none has merit.

AFFIRMED