**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2847
_____

RONALD B. GREENE,
                                    Appellant

v.

BRIAN KELLY; MICHAEL PEREZ;
DAVIS VALDIVIA; THOMAS DOMBROSKI;
MATTHEW ZABLOCKI

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-13-cv-05493)
District Judge:  Honorable William J. Martini

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 3, 2021
Before:  RESTREPO, PHIPPS and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 6, 2022 )
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Ronald Greene appeals the District Court's order granting summary judgment in favor of five law enforcement defendants in an action he brought pursuant to 42 U.S.C. § 1983 based on claims of excessive force. We will affirm in part, vacate in part, and remand for further proceedings.

I.

Greene was arrested during a daytime undercover operation conducted in Ridgefield Park, New Jersey, by the Bergen County Prosecutor's Narcotics Task Force. Officer Michael Perez posed as a buyer intending to purchase heroin from another individual in a hotel parking lot. A dozen other officers conducted surveillance nearby. Near the end of the transaction, Perez encountered Greene getting out of a car and standing roughly two to three feet away. Perez then gave a distress signal to other officers, yelled "gun" repeatedly, and fled from the scene.[1]

Brian Kelly, responding to Perez's signals, tackled Greene and secured him in handcuffs. Once Greene was handcuffed, Kelly tried to prevent Greene from turning his head by placing his knee on Greene's back and striking the back of Greene's head with an object, possibly a radio. Davis Valdivia then, according to Greene, kicked him in the

---

[1] Perez claimed that Greene had pointed a gun at him, and other officers at the scene reported seeing Greene point the gun and then throw it under Perez's car. Throughout his criminal trial and this litigation, Greene has maintained that he did not have a gun when he got out of the car, did not point a gun at Perez, and did not throw a gun under the car. See, e.g., Defs.-Appellees' App. Vol. II at Da1005–1007, 1015–1021 (denying having gun in first deposition). Because of his armed robbery and weapons convictions stemming from this event, see infra, any finding that he did not possess a weapon at the scene would be barred by Heck v. Humphrey, 512 U.S. 477, 487–88 (1994). His excessive force claims are not precluded by those convictions. See, e.g., El v. City of Pittsburgh, 975 F.3d 327, 339 (3d Cir. 2020).

face and head and used his foot to grind Greene's face into the pavement. Greene claims that defendants Dombrowski and Zablocki, who were also present, failed to intervene to stop Kelly and Valdivia.

Greene was placed in the back of an unmarked police vehicle and transported to another location for questioning before being processed and jailed. Greene was photographed shortly after his arrest and later at the jail. The day after his arrest, authorities asked Greene if he wanted medical treatment, and he declined. Greene was indicted on numerous charges, and a jury convicted him of twenty-two counts related to possession and distribution of controlled substances, armed robbery, and weapons possession. Greene appealed and his convictions were affirmed. See State v. Greene, No. A-4674-13T3, 2016 WL 6610350 (N.J. Super. Ct. App. Div. Nov. 9, 2016).

Greene initiated this action in September 2013, naming numerous officers involved in the surveillance and arrest as defendants. In February 2016, the District Court dismissed the bulk of Greene's claims with prejudice, but dismissed his excessive force claims without prejudice. Greene filed an amended complaint that named Kelly, Perez, and two John Doe officers as defendants; they moved to dismiss. The District Court granted the motion in part and denied it in part, holding that Greene could proceed only as to any excessive force alleged to have occurred after he was handcuffed.

Greene then filed his second amended complaint. Defense counsel deposed Greene and the parties conducted discovery before defendants Kelly and Perez filed their

first motion for summary judgment.[2] The District Court dismissed Perez from the case with prejudice, as there was no dispute that he had fled the scene before Greene was handcuffed. However, the District Court denied Kelly's motion for summary judgment, as the evidence produced at that point could allow a reasonable jury to find that he had used excessive force. The parties then conducted further discovery, including a second deposition of Greene by defense counsel. Defendants then filed a second motion for summary judgment, which the District Court granted, dismissing the case with prejudice. Greene timely appealed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and exercise plenary review over a district court's grant of summary judgment. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, "all justifiable inferences are to be drawn in . . . favor" of the non-moving party, id. at 255, and "[i]n qualified immunity cases, this

---

[2] Defendants filed the first motion for summary judgment with the assumption that Greene's second amended complaint was improperly filed, so they did not include any arguments on behalf of Valdivia, Dombrowski, or Zablocki, who were named only as John Does in the first amended complaint. As a result, the District Court's first summary judgment ruling pertained only to Perez and Kelly. See ECF No. 75 at 2.

4

usually means adopting . . . the plaintiff's version of the facts," Scott v. Harris, 550 U.S. 372, 378 (2007). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [when] ruling on a motion for summary judgment . . . ." Anderson, 477 U.S. at 255.

## III.

"Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007). In assessing qualified immunity, a court asks "(1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful.'" Lamont v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011) (alteration in original) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). Here, the District Court determined that the right at issue was clearly established, because "hitting, beating, or otherwise striking an already-handcuffed individual who is not resisting arrest may constitute unconstitutionally excessive force." Dist. Ct. Opinion 4, ECF No. 111 (citing Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006)). The District Court held that the officers here did not violate this right, and thus were entitled to summary judgment, because the record showed that any force employed was objectively reasonable as a matter of law. We disagree.

First, our review leads us to conclude that the video surveillance evidence does not clearly depict the events, as the District Court also found. It does show the encounter was brief. But it does not contradict Greene's version of events. The action that can be seen

5

on the video is not inconsistent with officers kicking or striking Greene. Appellees note that Greene testified at his first deposition that the encounter lasted maybe a minute or two; but he seemed in context to be referring to the entire incident from the time of his tackling to when he was hoisted up by the handcuffs and placed in a vehicle. See Appellee Br. at 8 (quoting deposition transcript found at Da0470–71).[3] While the video shows that the initial encounter with Kelly and Valdivia lasted seconds, more than two minutes passed before police lifted Greene up and placed him in a vehicle. Any reliance on Scott v. Harris is therefore misplaced, as the video does not clearly contradict Greene's account. See 550 U.S. at 378 (relying at summary judgment stage on videotape that "quite clearly contradicts the version of the story told by the" plaintiff). The force Greene alleges could have been used in the time that Kelly and Valdivia were with him, so the brevity of the encounter in the video is not dispositive evidence that their force was reasonable.

Second, appellees concede that Greene was not resisting and was compliant when handcuffed. See Kelly Resp. Req. Admis. at 4, ¶ 22, ECF No. 97-1 ("Ronald Greene was compliant after being taken to the ground."); Da0871–73 (Kelly testifying at Greene's criminal trial: "[H]e wasn't resisting. . . . [W]e just had to get him cuffed."). [4] The District

---

[3] "Da" refers to the page numbers in Appellees' Supplemental Appendix.

[4] We disagree with Greene that his acquittal on charges of resisting arrest related to this incident should be dispositive. See Williams v. Brooks, 809 F.3d 936, 945 (7th Cir. 2016) ("Evidence of acquittal in a criminal action is generally irrelevant and inadmissible in a civil case involving the same incident . . . ." (citation omitted)). Nonetheless, as described herein, appellees have conceded he was compliant and not resisting.

Court stated flatly in denying the first motion for summary judgment: "[I]t is undisputed that after Plaintiff was handcuffed, Plaintiff was not resisting arrest." ECF No. 75 at 6. Nor did Defendants dispute this fact in their second motion for summary judgment. See Br. Supp. Mot. Summ. J. at 15, ¶ 26, ECF No. 104-1 (quoting Kelly's testimony in the statement of material facts).

Despite this concession, appellees urge us to affirm the District Court's decision that any force they used was a reasonable response to Greene's attempt to turn his head to see who was arresting him. If Greene was handcuffed and prone, it is unclear what the justification would be for applying force to control movements that did not amount to resistance or noncompliance. We generally require that excessive force plaintiffs be able to identify the individuals responsible for their alleged mistreatment. See, e.g., Jutrowski v. Twp. of Riverdale, 904 F.3d 208, 291–92 (3rd Cir. 2018) (holding that, to survive summary judgment, a § 1983 plaintiff must be able to identify affirmatively each named defendant alleged to have used excessive force). As Greene argues, it would be incongruous to hold also that a suspect's attempt to turn his head to identify the officers involved in his arrest justifies otherwise unreasonable force. See Appellant Br. at 20.

Moreover, the record does not support the District Court's finding that, based on Greene's own deposition testimony, "[a]fter Plaintiff was tackled and handcuffed, he repeatedly attempted to turn his shoulders and neck around in order to see what was going on." ECF No. 111 at 4–5. In Greene's first deposition, defense counsel asked: "[Y]ou're motioning your head and your shoulders kind of turning around to see what's

7

going on?" Greene answered: "I'm trying to see, yeah." Da0470. But in the second deposition, Greene clarified this point:

> Q. Okay. I believe the last time we were here you kind of testified that after you were handcuffed, you kept trying to turn, kind of to ask what was going on or what was happening?
>
> A. I didn't turn. Like I told you, I'm pinned to the ground. I turned my face and looked like this. I didn't turn my body. I turned my face to look.

Da0534. Even assuming Greene was moving his shoulders as opposed to turning only his head, the same logic applies: if Greene's movements were not resistance, as the officers concede, then what was the justification for applying force to control those movements?

The District Court also cited Greene's mugshot photo and his refusal to accept medical treatment as evincing a "lack of any sign of injury." ECF No. 111 at 5. Even if that were true, while this Court has counseled that the presence of an injury may indicate the use of excessive force, the absence of injury does not necessarily disprove excessive force. See Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997), abrogated on other grounds by Curley, 499 F.3d at 209–11. But our review of the photographs leads us to another conclusion. Comparing the earlier photo (Da1061) with the later (Da1062), Greene's cheeks and lower lip appear swollen and there is discoloration around his temples consistent with bruising or scraping; the photographs do not show the back or sides of Greene's head. The District Court also found that Greene "subsequently failed to request any kind of medical treatment for his injuries." Id. However, Greene offered a

8

plausible rationale for not seeking treatment, saying that he "didn't trust it" and was focused on securing his release to seek outside medical attention. See Da0488–0490.

Given the totality of the circumstances, the District Court erred in concluding as a matter of law that the use of force was objectively reasonable. See Giles v. Kearney, 571 F.3d 318, 327 n.4 (3d Cir. 2009) (denying summary judgment on the basis of a factual dispute over whether a plaintiff was "fully subdued" when alleged excessive force occurred); cf. Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999) ("[R]easonableness under the Fourth Amendment should frequently remain a question for the jury."). Greene's accounts are not so inconsistent, vague, or refuted by the record as to warrant summary judgment for Kelly and Valdivia. See Anderson, 477 U.S. at 255.

But the District Court correctly granted summary judgment in favor of Dombrowski and Zablocki. As to Dombrowski, Greene claims that he was a superior officer who could have controlled the others' behavior through "voice command, visual signal, stern facial glance," or "a hand gesture."[5] Appellant Br. 16–17. As to Zablocki, Greene alleged that he was one of the two officers who jumped on him after he had already been tackled and handcuffed, and although Zablocki backed off and "didn't really use force" on him, Da0463, he "should have stopped[] the other two," Da0477.

Although the brevity of the encounter is not dispositive for Greene's claims of direct excessive force, it does defeat these claims. See Mensinger, 293 F.3d at 650–51

---

[5] To the extent Greene raises a claim based solely on Dombrowski's supervisory position, it is not cognizable. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding that a § 1983 plaintiff cannot rely solely on respondeat superior as a theory of liability).

("[A] police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force," but "is only liable if there is a realistic and reasonable opportunity to intervene."). The timeframe may have been sufficient for Kelly and Valdivia to apply the force, but we agree with the District Court that it did not present a realistic opportunity for the other two officers to intervene.[6] See, e.g., El, 975 F.3d at 335–36 (citing, inter alia, Ricks v. Shover, 891 F.3d 468, 479 (3d Cir. 2018)).

IV.

In conclusion, we will affirm the District Court's grant of summary judgment in favor of Dombrowski and Zablocki, vacate the grant of summary judgment in favor of Kelly and Valdivia, and remand the case for further proceedings consistent with this opinion.

---

[6] To the extent that Greene challenges the District Court's grant of summary judgment in favor of Perez, this conclusion applies with even greater force. It is undisputed that Perez left the scene before the incident and did not return until well after. We will affirm this portion of the District Court's decision on the first motion for summary judgment.