**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 1, 2022[*]
Decided April 8, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 21-1952

| | |
|---|---|
| QUENTRELL E. WILLIAMS, | Appeal from the |
|     *Plaintiff-Appellant*, | United States District Court for the |
| | Western District of Wisconsin. |
|     *v.* | |
| | No. 18-cv-730-wmc |
| MICHAEL HAURE, et al., | |
|     *Defendants-Appellees*. | William M. Conley, |
| | *Judge*. |

## O R D E R

When he was a pretrial detainee, Quentrell Williams was placed in restraints because of his threats of self-harm. Williams sued one correctional officer for using

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

excessive force in restraining him and several other officers and a nurse for failing to intervene in what he alleged was a violation of his constitutional rights. *See* 42 U.S.C. § 1983. The defendants moved for summary judgment, and the district court granted the motion. On appeal Williams argues that the judge failed to construe the evidence in his favor. But because he lacked sufficient evidence to withstand summary judgment, we affirm.

While in pretrial detention at the Dane County Jail in Madison, Wisconsin, Williams regularly threatened suicide and used concealed pieces of metal to cut himself. After he cut himself again in July 2018, officers—at least some of whom knew of his history—secured Williams in a restraint chair. Kaitlyn Jorgensen, a nurse at the jail, treated Williams's cut and ensured that his bindings were not too tight by checking the blood flow to his hands and feet.

Officer Michael Haure then wheeled the restrained Williams to an observation cell where a security camera captured what followed (without recording audio). We describe the events in the light most favorable to Williams but set forth what appears on the video when there is a conflict. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016). Williams, who was moving his left hand slightly, complained that his left-wrist restraint was too tight. Haure tugged on the restraint while, according to Williams, whispering that this would "give him something to cry about." Haure attested that he saw Williams turning his left hand, which in his experience meant that Williams could free his hand, so he adjusted the strap to secure Williams. As Haure walked away, Williams leaned his head toward him. Haure believed Williams spat at him, while Williams attested that he only shouted profanities.

After Officer Haure left the cell, Williams started rocking the restraint chair. Officers who were observing attested that he was shouting that he would not stop rocking unless his left wrist restraint was loosened. Through the observation window, Haure saw something fly out of Williams's mouth. He entered the cell with four other officers. One covered Williams's head with a blanket until the others could replace it with a "spit hood." The officers then tied the restraint chair to the concrete bed. As they did so, Haure grabbed Williams's head and held it to prevent him from fighting the officers or removing the spit hood. According to Williams, he was not resisting, but Haure nevertheless struck his nose and applied undue pressure to his head. But Officer Haure, whose back was to the camera, did not pull back and strike Williams or appear

to be squeezing his head, and no other officer witnessed Haure forcefully hold or strike Williams.

When Williams was released from the restraints two hours later, he received medical attention from medical staff other than Nurse Jorgensen. The examination revealed no bruising or other signs that the restraints had been too tight, though Williams complained about severe left-hand pain, limited range of motion in his left hand, and facial injuries. When Williams was evaluated the next day for another self-inflicted injury, however, he did not report any pain in his hands or face.

Williams sued the officers and Jorgensen for violating his Fourteenth Amendment right as a pretrial detainee to be free from excessive force. He asserted that Officer Haure used unreasonable force when he tightened the left-hand restraint and when he struck his nose and placed his body weight on Williams's head. Williams alleged that the remaining officers and Jorgensen failed to intervene in Haure's use of force.

After filing an amended complaint and during discovery, Williams moved for court-recruited counsel, citing the complexity of his claims and his limited cognitive abilities. The magistrate judge (to whom pretrial matters were referred) denied the request for counsel because Williams "aggressively advocat[ed] for himself" and appeared capable of litigating his case. Then, after the defendants disclosed potential expert witnesses, Williams moved for an extension of the (already passed) deadline for his own disclosures and asked the court to appoint an expert witness, emphasizing the disparity between the defendants' resources and his own. The magistrate judge denied that request because Williams did not explain how an expert witness would help him prove his claims. Williams later renewed each of these motions for the same reasons, and the magistrate judge again denied them.

Following discovery, the defendants jointly moved for summary judgment. Based primarily on the video, the district judge determined that no reasonable jury could conclude that the force that Haure applied to either Williams's left hand or head was excessive. And the judge rejected the failure-to-intervene claims on the ground that there was no unconstitutional action that required intervention.

On appeal Williams argues that the evidence is sufficiently in dispute to preclude summary judgment. Our review is de novo, based on the record viewed in the light most favorable to Williams with the caveat that we do not credit his version of events if

the video contradicts it. *Scott*, 550 U.S. at 380–81; *Williams*, 809 F.3d at 942. Pretrial detainees have a right to be free from unconstitutional conditions of confinement, including the use of excessive force. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *see Day v. Wooten*, 947 F.3d 453, 461–62 (7th Cir. 2020) (confirming an arrestee's analogous right to be free from excessively tight handcuffs). The applicable standard is objective and not dependent on the defendant's intent or state of mind. *See Hardeman v. Curran*, 933 F.3d 816, 822 (7th Cir. 2019) (citing *Kingsley*, 576 U.S. at 397–98).

Williams first challenges the excessive-force ruling and argues that the district judge erred by giving more weight to Officer Haure's version of the events. Williams contends that Haure's belief that Williams posed a threat to himself and the officers was pure speculation, which the judge inappropriately credited. He also argues that because he could not have harmed anyone while bound, Haure's actions were unjustified.

However, the evidence does not leave material issues of fact on the excessive-force claim in dispute. The video and Officer Haure's testimony corroborate Williams's account that Haure tugged on and tightened Williams's left-wrist strap and later held his face. But Haure's explanation for these actions is consistent with the video. Further, Nurse Jorgensen had checked Williams's blood flow to ensure the strap was not too tight, and the video depicts Williams moving his left hand, belying his assertion that the restraints were unreasonably tight. Even if Williams opened his hand to relieve himself of discomfort, as he says, none of Officer Haure's actions appears "excessive in relation" to the need to keep Williams from freeing himself given his repeated credible threats to cut himself and attempt suicide and his agitated state at various points. *Kingsley*, 576 U.S. at 398; *see also Brown v. Polk County*, 965 F.3d 534, 540 (7th Cir. 2020). Moreover, the medical evaluation immediately after the restraint revealed no signs of distress, and Williams did not repeat his complaints at the next day's assessment. And in light of Williams's rocking and Haure's belief that Williams spat on him, no reasonable jury could find that Haure's holding of Williams's head as the other officers secured the restraint chair to the bed (without striking or smashing Williams, as the video shows) was excessive.

On his failure-to-intervene claim, Williams asserts that Jorgensen and the officers other than Haure heard him complain of a too-tight restraint and saw Officer Haure applying unjustified force to his head, yet did nothing to stop these uses of force. But this claim depends on unconstitutional action by Haure and therefore fails. Because no reasonable jury could find that Haure subjected Williams to excessive force, "there can be no failure to intervene." *Turner v. City of Champaign*, 979 F.3d 563, 571 (7th Cir. 2020)

(quotation marks omitted). And even if Jorgensen had witnessed Haure use excessive force, as a nonofficer she could not override the correctional officers. *See Priester v. City of Riviera Beach*, 208 F.3d 919, 924–25 (11th Cir. 2000); *see also Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017).

Finally, Williams argues that the district court erred in denying his motions to recruit counsel and appoint an expert witness. He argues that he needed attorney representation to handle complex issues of credibility and an expert witness to testify about Dane County's use-of-force policies—one subject of expert testimony the defendants had disclosed. But the magistrate judge who made these rulings did not err.

First, civil litigants are not entitled to the assistance of court-appointed counsel. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc)). An indigent plaintiff must make reasonable efforts to obtain counsel independently *and* be unable to litigate the case given its level of complexity. *Id.* The magistrate judge accepted Williams's attempts to retain counsel as sufficient but reasonably concluded that he was capable of litigating his case pro se based on his demonstrated competence in filing motions. And because credibility cannot be decided at summary judgment, Williams's justification for a lawyer falls short.

Second, Williams failed to persuade the magistrate judge of the need for an expert witness to explain use-of-force policies. Although he acknowledged that the defendants had disclosed several expert witnesses while Williams had none, the magistrate judge reasonably exercised his discretion. *See Giles v. Godinez*, 914 F.3d 1040, 1052 (7th Cir. 2019). On the first motion, the magistrate judge determined that Williams had "not identified the role an expert witness would play in assisting him." And the magistrate judge saw no reason to reverse his decision when Williams again failed in his renewed motion to explain the relevance of expert testimony to his claims. In any event, the lack of expert witnesses on use-of-force policies did not prejudice Williams: In granting the summary-judgment motion, the district judge rightly noted that noncompliance with local use-of-force policies does not establish a constitutional violation. *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). More importantly, the defendants did not use expert testimony to support their motion for summary judgment, and given the decisive nature of the video, neither the district judge's nor our decision relies on expert evidence.

AFFIRMED